UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYDIA R. BRENNAN,

    Plaintiff,

v.

CASE NO. 06-14334
HON. LAWRENCE P. ZATKOFF

WALDMAN MANAGEMENT
d/b/a GALPIN APARTMENTS and
JEFF LNU,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 19, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter comes before the Court on Defendants' Motion to Dismiss and for Summary Judgment [dkt 20]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion is GRANTED.

**II. BACKGROUND**

In late October or early November 2003, Plaintiff, a black female, began looking for an apartment to rent in Royal Oak, Michigan. At that time, she was employed in an executive position with Visteon Corporation in Dearborn, Michigan. Her search brought her to Defendant Galpin

Apartments. Plaintiff called Galpin's manager, Neil Fletcher,[1] who indicated that the complex had immediate availability. Plaintiff and Fletcher arranged for a viewing of an available unit. Fletcher buzzed Plaintiff into the outer doors of the complex, and Plaintiff then knocked on Fletcher's door. According to Plaintiff, Fletcher seemed startled when he saw Plaintiff, mumbled something, and "jerked his body back."

Fletcher took Plaintiff to the vacant apartment, which was in good condition but contained outdated appliances. Fletcher apparently told Plaintiff that it was a small building, and the tenants were like a family. Fletcher made no mention of any planned renovations for the unit. After a day of consideration, Plaintiff called Fletcher to determine the next step in the rental procedure. On or around November 5, 2003, Plaintiff went to Fletcher's apartment to complete the requisite apartment application. An unknown male opened Fletcher's door while holding a cat. Plaintiff sat at Fletcher's kitchen table while Fletcher sat across the table from her, and the unknown male paced behind her, continuing to hold and pet the cat less than a foot away from Plaintiff. Although the application was straight-forward, the presence and proximity of the unknown man caused Plaintiff discomfort. Plaintiff exchanged few words with either man. At no time during this interaction did Fletcher alert Plaintiff to the possibility of repairs to the unit. Plaintiff informed Fletcher at some point in these proceedings that she would like to move in as soon as possible.

Fletcher later called Plaintiff to inform her that her application appeared to be in order. He also told Plaintiff that she needed to provide a check for the security deposit and the first month's

---

[1] Fletcher is not a party to this suit. One of Defendant Galpin's subsequent managers, Jeff LNU (Last Name Unknown), was listed in the complaint as a party to the suit. Jeff was also the manager during the period in which the Fair Housing Center of Metropolitan Detroit conducted all racial discrimination tests, discussed *infra*. It does not appear, however, that the Complaint was ever amended or that Jeff was ever served.

rent as well as perform a walk-through of the apartment. During this exchange, Fletcher told Plaintiff for the first time that the apartment required repair work on the hardwood floors that would preclude Plaintiff from moving in within her timetable. Plaintiff replied that she was willing to wait but, despite several inquiries by Plaintiff, Fletcher could not tell her when the floor work would be completed. Fletcher repeatedly told Plaintiff that the repairs would not coincide with her timetable. Plaintiff advised Fletcher that although she wanted to move in as soon as possible, her timetable was flexible. At one point, Fletcher told Plaintiff that repairs were going to take "longer than anticipated," but he could not provide any concrete estimate. Plaintiff later called Fletcher, stated, "you know, I know what you're trying to do" and expressed that she was no longer interested in renting the apartment. To this, Fletcher allegedly responded, "Oh, Okay, thanks." Fletcher recalled that Plaintiff said she would be moving in with a roommate or a friend instead. The floor of the apartment unit was replaced in January 2004. Plaintiff abandoned her pursuit of an apartment and continued to reside with her mother for approximately the next year. Plaintiff and Fletcher had no further contact with each other.

Some discrepancies surround what transpired next. According to Plaintiff, she attended a social function at which she met an employee of the Fair Housing Center of Metropolitan Detroit ("Center") who heard her story and encouraged her to explain her situation to the Center. That employee, Michael Olshan, however, testified at his deposition that he met Plaintiff at a law office when she was interviewed as a witness in litigation proceedings against Whispering Woods apartment complex, where Plaintiff had rented a unit in November 2004. She never testified in that matter, however, since the parties settled that case. Regardless of how the situation unfolded, the Fair Housing Center learned of Plaintiff's situation in 2006. The Center tests various apartment and

3

housing complexes for racial discrimination by sending two individuals to the complex in question on or about the same day. One of these individuals is black (the "protected test"), and the other is white (the "comparison test"). The tests allegedly ask the same questions during their visits to the complexes and then complete test forms. The Center reviews these forms for indicia of disparate treatment.

On June 8, 2006, two female tests inquired about renting units from Defendant Galpin Apartments at different times of the day. According to the Center, the test result forms indicated three areas of discrimination: 1) the protected test was shown only one, one-bedroom unit while the comparison test was shown two, two-bedroom units; 2) the protected test was not informed of any professional requirement whereas the comparison test was given "code language" that the manager "tr[ies] to keep it all professionals" and "I do a good job screening"; and 3) the manager informed the protected test that tenants must have excellent credit to live there, but the comparison test received no such warning.

Almost two weeks later, the Center tested Defendant again, this time with male tests. According to the Center, these forms also revealed several instances of disparate treatment: 1) the protected test was told that only one, two-bedroom unit was available, and the comparison test was told that there were three units (both one-bedroom and two-bedroom units) available; and 2) the protected test was told of several fees, but the comparison test was not so informed.

Plaintiff filed her complaint on October 2, 2006, alleging that Defendants violated the Fair Housing Act of 1988, the Civil Rights Act of 1866, and the Michigan Elliot-Larsen Civil Rights Act. On October 20, 2006, this Court declined to exercise supplemental jurisdiction over Plaintiff's Elliot-Larsen Civil Rights Act claim arising under Michigan law.

# III. LEGAL STANDARD

## A. MOTION TO DISMISS

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Furthermore, the Court need not accept as true legal conclusions or unwarranted factual inferences. The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

## B. SUMMARY JUDGMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish

its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV.  ANALYSIS

#### A. FAIR HOUSING ACT OF 1988

In her Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff acknowledges that her claim under the Fair Housing Act of 1988 is time-barred and stipulates to its dismissal. Accordingly, this Court dismisses Count I of the complaint for failure to state a claim upon which relief may be granted. Plaintiff's only remaining claim is brought under the Civil Rights Act of 1866.

#### B. CIVIL RIGHTS ACT OF 1866

Plaintiff argues that her case presents questions of material fact. Specifically, Plaintiff maintains that Defendants violated the Civil Rights Act of 1866 in the following ways:

> a) Making false representations regarding the availability of apartments for rent;
> b) Discouraging Plaintiff from renting the unit;
> c) Refusing to negotiate in good faith with Plaintiff to lease the subject premises;
> d) Otherwise making unavailable and denying Plaintiff the opportunity to obtain a lease to the subject premises;
> e) Discriminating against Plaintiff in the term, conditions, and privileges of her prospective leasehold and in the furnishing of facilities and services in connection therewith.

Defendants contend that these allegations do not constitute an adequate prima facie showing of discrimination because Plaintiff was approved for the apartment unit and subsequently "backed out" of the lease on her own initiative; she was thus never "rejected." Plaintiff contends that Defendants' approach to the floor repairs amounted to a "constructive" rejection of Plaintiff's application.

Plaintiff brings suit under 28 U.S.C. §§ 1981 & 1982. The former of those sections provides for equal rights of all individuals under the law:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

28 U.S.C. § 1981. Section 1982 addresses the equality of property rights for all citizens: "All citizens of the Unites States shall have the same right in every State and Territory, as is enjoyed by white citizens therof to inherit, purchase, lease, sell, hold, and convey real and personal property." *Id.* § 1982.

The *McDonnell Douglas* burden-shifting analysis applies to federal housing discrimination claims brought under 42 U.S.C. §§ 1981 & 1982. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Under the analysis, the plaintiff must first establish the four elements of a prima facie case: "(1) that he or she is a member of a racial minority, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter." *Mencer v. Princeton Square Apts.*, 228 F.3d 631, 634–35 (6th Cir. 2000). The prima facie case may be established by direct or circumstantial evidence. *Schanz v. Village Apts.*, 998 F. Supp. 784, 788 (E.D. Mich. 1998). The prima facie elements are not "intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). The court need not employ the *McDonnell Douglas* burden shifting analysis when a plaintiff can establish direct evidence of discrimination. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). A plaintiff can establish a direct violation of the civil rights statute even if she only establishes that race was a factor, as

7

opposed to the sole factor, considered in her rejection. *See, e.g.*, *Green v. Century 21*, 740 F.2d 460, 464 (6th Cir. 1984). Direct evidence requires no inferences to be drawn by the fact-finder. *See, e.g.*, *Laderach v. U-Haul*, 207 F.3d 825, 829 (6th Cir. 2000).

Once a plaintiff adequately establishes a prima facie case of discrimination, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the housing decision. *Mencer*, 228 F.3d at 634. In order to do this, the defendant must clearly present the reason for rejecting the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Subjective reasons for the plaintiff's rejection will elicit greater scrutiny from the court. *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1040 (2d Cir. 1979). If the defendant successfully sets forth a nondiscriminatory reason, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255. After the defendant's rebuttal, the burden returns to the plaintiff to expose the defendant's purported reason as mere pretext. *Id.*

Plaintiff has not presented any direct evidence of discrimination. She offers no fact establishing that Fletcher's actions were part of a scheme to deny her tenancy because of her race. Even if Fletcher's actions raise some suspicion as to his motives, they are insufficient to lead a reasonable jury to conclude that Plaintiff was discriminated against based on her race. Plaintiff, then, must demonstrate discrimination by satisfying the *McDonnell Douglas* prima facie case.

Plaintiff satisfies the first two elements of the prima facie showing of discrimination. The question on which this Summary Judgment motion hinges is whether a genuine question of material fact exists as to whether Plaintiff was constructively "rejected" from renting from Defendant Galpin. Essentially, Plaintiff contends that by not telling her about the hardwood floor repairs initially, by

8

not committing to a set time frame in which the repairs would occur, and through subtle intimidation, such as the presence of the unknown man while she filled out the rental application, Defendants constructively rejected Plaintiff's rental application. Plaintiff provides no case law in support of her constructive rejection theory. *See Kelly v. Apollo Travel Servs. P'shp.*, No. 98-2506, 2000 U.S. Dist. LEXIS 12017, at *29–30 (N.D. Ill. Aug. 16, 2000) ("The court's research has not revealed a case in which an employer's undesirable description of a job constituted a rejection, express or implied."). Plaintiff relies on *Davis v. The Mansards*, which presents a fact pattern too divergent from the present case to be instructive. In that case, the record revealed, among other egregious conduct, deception, misrepresentations about apartment availability contradicted by direct evidence, and racially motivated manipulation of waiting lists. 597 F. Supp. 334 (N.D. Ind. 1984).

In this case, considering the evidence in a light most favorable to Plaintiff, the sum total of evidence in support of her rejection argument amounts to (1) Plaintiff's testimony that Fletcher physically reacted to her, (2) sudden hardwood floor repairs with no specific completion date, and (3) Plaintiff's testimony that Fletcher responded merely "Oh, Okay, thanks" when she told him that she knew what he was trying to do. Plaintiff has not established that other units were available at the time she first sought the apartment and can only speculate that the work done on the hardwood floors of the unit was part of an elaborate plan to discourage her from leasing there because of her race. This court is not required to draw inferences from the record that are unreasonable, and Plaintiff has not provided evidence that suggests this inference is reasonable. Accordingly, Plaintiff has not established the third prong of the *McDonnell Douglas* prima facie case.

Because Plaintiff relied at least in part on the Center's discrimination tests of Defendants in bringing her suit, the Court briefly addresses the merits of the Center's reports. After examining the

test documents, the Court questions how the Center reached its conclusions. In the Fried/Horton test, the Center found evidence of discrimination when the protected test (Horton) was told that she must have excellent credit, and the comparison test (Fried) received "no such requirement." Yet, in her report, Fried wrote, "must have good credit" in her notes taken from her phone conversation with Defendant Galpin's manager. The Center also found evidence of discrimination because Horton was shown only a one-bedroom unit while Fried was shown both a one-bedroom and a two-bedroom unit. Although Horton's notes do indicate that she had to inquire about the two-bedroom apartment, the notes from the visit also indicate that "Jeff was *really trying to sell me* the one bedroom unit" (emphasis supplied). Her own description belies notions of discrimination because it reveals that Defendant Galpin's manager was *trying* to sell her a unit.

Discrepancies in the test reports and the Center's conclusions also exist in the Simmons/Pierson test. The Center found a potential sign of discrimination when the protected test (Simmons) was given a fee attachment to the rental application or at least given an application with the fees already written into it. The Center's test comparison sheet indicates that the comparison test (Pierson) was shown "no fee, just phone #." Pierson's summary, however, states, "Jeff picked up an app. off the kitchen counter and wrote down rental rates *and other fees*" (emphasis supplied). On an attached sheet, Pierson included the same fees that were shown to Simmons. Finally, the Center points to potential discriminatory treatment because Simmons was shown only one available unit (a two-bedroom unit) and Pierson was shown three available units (a one-bedroom and a pair of two-bedrooms). This is not clear from Simmons's forms. In one section, he wrote that only one, two-bedroom unit was available, yet he also indicated that the availability of other units was "not stated." Further, according to his deposition, Simmons stated that he only requested a two-bedroom

apartment while Pierson told the manager that he was interested in either a one-bedroom or a two-bedroom unit.

After examining the Center's purported evidence of disparate treatment, the Court finds that only Defendant Jeff LNU's statements to Fried regarding his screening of tenants are uncontradicted by the materials submitted to the Court. Without more, no reasonable jury would find that these statements establish a discriminatory intent on the part of Defendants. The Center's findings do not advance Plaintiff's cause in this matter.

## V.  CONCLUSION

For the above reasons, Defendants' Motion to Dismiss and for Summary Judgment is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: December 19, 2007

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 19, 2007.

                                          s/Marie E. Verlinde
                                          Case Manager
                                          (810) 984-3290